MISTLETOE EXPRESS SERVICE, an Oklahoma Corporation, Plaintiff-Appellee,

v.

MOTOR EXPRESSMEN'S UNION, a Labor Organization, and Roy Martin, Defendants-Appellants.

No. 76–1596.

United States Court of Appeals, Tenth Circuit.

Submitted Sept. 26, 1977.

Decided Dec. 9, 1977.

Clark Nichols, Edmond, Okl. and Charles W. Ellis, Oklahoma City, Okl., submitted on the brief for plaintiff-appellee.

Jerry D. Sokolosky, Oklahoma City, Okl., submitted on the briefs for defendants-appellants.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This controversy concerns the validity of an arbitration award. The employer sued to set aside the award. The Union and the employee counterclaimed for enforcement. Federal jurisdiction is based on 29 U.S.C. § 185(a). The district court held the award invalid and denied enforcement. We affirm.

Plaintiff-appellee, Mistletoe Express Service, had a collective bargaining contract with defendant-appellant Motor Expressmen's Union. Defendant-appellant Martin was an employee of Mistletoe and a member of Union. He worked as a driver-salesman and was required to collect from the consignees of C.O.D. shipments. Section 11 of the contract between Mistletoe and Union provided:

"Employees may be discharged for just cause, among which just causes are the following:

\* \* \* \* \* \*

(G) Failure to settle bills and funds collected for the company within twenty-four (24) hours."

A company rule required that a driver accept only cash or cashier's checks in payment of C.O.D. deliveries. On January 16, 1975, Martin delivered a C.O.D. shipment to a consignee and accepted a personal check. On January 23, Martin returned the check to the consignee, collected in cash, and settled with Mistletoe that evening. Mistletoe terminated Martin's employment for failing to settle within 24 hours and accepting a personal check for a C.O.D. shipment. After receipt of the notice of termination, Martin threatened the Mistletoe cashier who handled C.O.D. transactions.

As provided by the contract, the Union and Martin followed the grievance procedures which culminated in arbitration. After an evidentiary hearing, the arbitrator held:

"It is the opinion of the arbitrator that the acts of the grievant justify discipline and the company did show 'just cause' to impose some discipline. At the hearing exhibits were introduced to show that the grievant had received some letters of discipline, however, the theory of progressive discipline was not pursued during the handling of the grievance. It is the opinion of the arbitrator that just cause was not shown by the company for discharge and that the supreme penalty of termination should be reduced to a suspension."

In the district court, the issues were tried on a stipulation of facts. The court gave consideration only to the failure to settle within 24 hours as a basis for discharge. The court held that the arbitrator exceeded his authority by reading the theory of progressive discipline into the Union contract and by changing the penalty from discharge to suspension.

■ The narrow scope of judicial review of arbitration awards was outlined by the Supreme Court in the Steelworkers trilogy, *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, and *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The courts may not review the merits of a grievance or an award. 363 U.S. at 568, 80 S.Ct. 1343. An arbitration award will be enforced if "it draws its essence from the collective bargaining agreement." 363 U.S. at 597, 80 S.Ct. at 1361. See also *Campo Machining Co. v. Local Lodge No. 1926, etc.,* 10 Cir., 536 F.2d 330, 332–333. In determining whether an award draws its essence from the Union contract, the courts have applied various tests. An arbitrator's award must be upheld unless it is contrary to the express language of the contract, *Amanda Bent Bolt Co. v. U. A. W.,* 6 Cir., 451 F.2d 1277, 1280; and *Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Company,* 8 Cir., 330 F.2d 562, 566, or unless it is "so unfounded in reason and fact, so unconnected with the wording and purpose of the \* \* agreement as to 'manifest an infidelity to the obligation of the arbitrator.' " *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.,* 5 Cir., 415 F.2d 403, 415, cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500. The award does not draw its essence from the agreement if "viewed in the light of its language, its context, and any other indicia of the parties' intention," it is without rational support. *Ludwig Honold Mfg. Co. v. Fletcher,* 3 Cir., 405 F.2d 1123, 1128.

The employer had much difficulty with C.O.D. collections because of a substantial number of stop-payment and insufficient fund checks. The employer and the Union negotiated a new labor contract which became effective on November 9, 1974. It contained § 11(G), a provision not appearing in previous labor contracts.

It is not disputed that Martin delivered the C.O.D. shipment on January 16 and did not settle with his employer until January 23. The arbitrator found that this conduct

justified discipline but was not "just cause" for discharge.

■ The Union and the employee assert that the labor contract is ambiguous and that the interpretation of that ambiguity is within the authority of the arbitrator whose decision is binding and not subject to judicial review. The ambiguity is said to arise from the provision of § 11(G) that the employer "may" discharge. We find no ambiguity in the use of "may" rather than "will." The provision gives the employer the option to discharge or not. The employer exercised the option and discharged Martin.

■ Except for the testimony of witnesses for the employer relative to the difficulties over C.O.D. shipments, there is no evidence relating to the intent of the parties in agreeing to § 11(G). The arbitrator refers to the lack of uniform enforcement. The new contract had been in effect for only a few days over two months when the incident in question occurred. We find nothing in the record which suggests that in the short period between the new contract and the discharge there had developed any custom, usage, or contract interpretation which would preclude the discharge of Martin. The record does not show, and the arbitrator did not find, any malicious, arbitrary, or discriminatory conduct of the employer in discharging Martin. The award cannot be sustained on any theory of selective enforcement. See *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446, and *Mackay Telegraph Co. v. Little Rock,* 250 U.S. 94, 100, 39 S.Ct. 428, 63 L.Ed. 863.

■■ The arbitrator said that "the theory of progressive discipline was not pursued during the handling of the grievance." The statement is correct but has no pertinence. In a proper case an arbitrator, in reliance on custom or usage in an industry, may construe a "just cause" provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is "just cause" for discipline but not for discharge. In the instant case, however, § 11(G) explicitly says that failure to settle in 24 hours is just cause for discharge. Subsection (G) is in sharp contrast with Subsections (F) and (K) which provide for graduated disciplinary measures culminating in discharge. The parties could have provided for progressive discipline in Subsection (G) but they did not. Nothing in the record justifies a rational inference that the parties intended anything other than discharge when an employee violated Subsection (G).

In reducing the penalty from discharge to suspension, the arbitrator substituted his views of proper industrial relationships for the provisions of the contract. He expressly found that there was just cause for discipline. The contract says that the acts, which the arbitrator found are just cause for discipline, are just cause for discharge. The arbitrator may not rewrite the labor contract.

■ The desirability of settling labor-management disputes by arbitration is not debatable. See *Satterwhite v. United Parcel Service, Inc.,* 10 Cir., 496 F.2d 448, 451–452, cert. denied, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674, and cases there cited. The use of arbitration depends on the labor contract. An arbitration award will not be upheld when it contravenes the express language of the labor contract. See *Local Union No. 787, I.U.E. v. Collins Radio Co.,* 5 Cir., 317 F.2d 214, 220; *Amanda Bent Bolt Co. v. U.A.W.,* 6 Cir., 451 F.2d 1277, 1280; and *Truck Drivers and Helpers Union Local 784 v. Ulry-Talbert Company,* 8 Cir., 330 F.2d 562, 566. The action of the arbitrator in the instant case violated the essence of the agreement. We agree with the trial court that the award was unauthorized by the labor contract and may not stand.

Affirmed.