**LITVAK PACKING COMPANY, a Colorado Corporation, Plaintiff,**

v.

**AMALGAMATED BUTCHER WORKMEN, LOCAL NO. 641, AFL–CIO, and James J. Sanchez, Defendants.**

Civ. A. No. 77–C–392.

United States District Court,
D. Colorado.

Sept. 1, 1978.

Richard S. Mandelson of Jones, Meiklejohn, Kehl & Lyons, Denver, Colo., for plaintiff.

Martin D. Buckley of Hornbein, MacDonald & Fattor, Denver, Colo., for defendants.

## OPINION AND ORDER

CHILSON, Senior District Judge.

This is an action by an employer to have the court set aside an arbitrator's award. Jurisdiction is asserted under 29 U.S.C. § 185; 9 U.S.C. § 10(d); 28 U.S.C. §§ 1331, 1337, 2201, 2202. Both parties have filed motions for summary judgment which have been extensively briefed, oral argument has been had, and the motions are ready for disposition. There is no dispute as to any material fact.

In August 1976, James Sanchez was an employee of the plaintiff and a member of the defendant union. The bargaining agreement then in effect between the employer and the union provided in pertinent part:

> "No employee covered by this Agreement shall be suspended, demoted or dismissed without just and sufficient cause. Sufficient cause for discharge shall include, among other reasons, . . . insubordination . . . ." Art. 6, para. 6.01.

On August 13, 1976, an angry exchange between Sanchez and his supervisor and the refusal by Sanchez to obey his supervisor's order to recommence work resulted in Sanchez being discharged for insubordination.

Pursuant to the terms of the bargaining agreement the dispute arising from Sanchez's discharge was pursued through the various stages of the grievance process and was eventually submitted to arbitration. Two "stipulated issues" were presented for resolution:

> "Was the grievant, Mr. James Sanchez discharged for just cause under the provisions of the current Labor Agreement? If not, to what relief is the grievant entitled?"

After reviewing the circumstances surrounding the incident the arbitrator concluded that "there is simply no question that Sanchez was insubordinate." Arbitrator's Award at 6–7. However, the arbitrator continued: "Having found Sanchez insubordinate, it does not follow that his offense justifies the severe penalty of discharge." *Id.* at 7. The arbitrator found

that the offense was minor; that Sanchez's behavior was at least in part provoked by the supervisor; that the harsh penalty of indefinite suspension imposed by the supervisor was partly motivated by personal dislike of Sanchez; and that "in a number of cases in the past" lesser penalties had been imposed upon other employees whose insubordinate behavior had been slightly more egregious than that of Sanchez. The arbitrator consequently concluded that "[o]n balance, Sanchez's indiscretions do not warrant the penalty of discharge." *Id.* at 8. An award was entered on April 12, 1977, converting Sanchez's dismissal to a two month suspension without pay and reinstating Sanchez with back pay accruing from October 14, 1976.

## CONTENTIONS

The plaintiff contends that in converting Sanchez's dismissal to a lesser penalty the arbitrator exceeded his authority and that the award should be set aside. The defendant counterclaims for enforcement of the award and for $150,000 in compensatory and exemplary damages, plus costs, interest, and attorneys' fees.

## CONCLUSION

The plaintiff's motion for summary judgment should be granted insofar as it requests vacation of the arbitrator's award. The defendants' motion for summary judgment should be denied and his counterclaim should be dismissed.

## DISCUSSION

The various rules delimiting the scope of judicial review of arbitration awards were recently canvassed in *Mistletoe Express Service v: Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir. 1977):

> "The courts may not review the merits of a grievance or an award. An arbitration award will be enforced if 'it draws its essence from the collective bargaining agreement.' . . . An arbitrator's award must be upheld unless it is contrary to the express language of the contract or unless it is 'so unfounded in

reason and fact, so unconnected with the wording and purpose of the * * * agreement as to "manifest an infidelity to the obligation of the arbitrator." ' The award does not draw its essence from the agreement if 'viewed in the light of its language, its context, and any other indicia of the parties' intention,' it is without rational support." (citations omitted).

Also, *see International Brotherhood of Electrical Workers v. Professional Hole Drilling, Inc.*, 574 F.2d 497, 502–03 (10th Cir. 1978). The circuit court added its own caveat to these principles: "The arbitrator may not rewrite the labor contract." 566 F.2d at 695. This prohibition is echoed by the terms of the bargaining agreement: an arbitrator, although given the power to "hear and determine the matter in dispute or controversy" (art. 34, para. 34.05) and to bind both the employer and union by his decision (*id.*), is given no power "to add to, subtract from nor modify any of the terms of this Agreement," (art. 34, para. 34.07).

Guidance for applying these rules to the present fact situation can be found in the *Mistletoe Express Service* case. An employee of Mistletoe was discharged for his failure to account to the company within twenty-four hours for funds he had collected, although he did make a full accounting within a week of receipt of the funds. The bargaining agreement provided that no discharges could be accomplished without "just cause," a term defined in the agreement as including the failure to settle bills and funds within twenty-four hours. The arbitrator, while conceding that the company had "just cause" to impose some discipline, determined that the harsh penalty imposed was unjustified and reduced the employee's discharge to a suspension. The circuit court affirmed the district court's order setting aside the arbitration award. The court regarded the bargaining agreement as unambiguous and held that the arbitrator, once he had found that a failure to make a timely accounting had occurred, had no authority to set aside the discharge.

Given the obvious similarity between *Mistletoe* and the present case *Mistletoe,*

unless distinguishable, dictates the outcome of this litigation. Although the parties' briefs do not discuss the impact of *Mistletoe,* the arguments raised in them and those made at oral argument suggest three possible distinctions.

First, in *Mistletoe* the agreement allowed discharge for "just cause" and expressly defined "just cause" for discharge as including the grievant's actions. In the present case, however, discharge may be utilized only for "just and sufficient cause." Only the latter term, "sufficient cause," is defined (by the next sentence) as including insubordination. See Bargaining Agreement, art. 6, para. 6.01. The defendant argues strenuously that since "just cause" was not defined it was within the arbitrator's authority to find that even though "sufficient" cause for discharge (insubordination) existed, the dismissal of the employee was not "just" under the circumstances of the case.

The question is one of contract interpretation and the arbitrator's judgment will not be overturned unless "it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation." *International Brotherhood of Electrical Workers v. Professional Hole Drilling, Inc.,* 574 F.2d 497, 503 (10th Cir. 1978). Even under this stringent test it is apparent that the proffered rationale provides no support for the result reached by the arbitrator. A contract should be interpreted so as to give effect to every word, phrase, clause, and sentence of the contract, if possible. *Cities Service Gas Co. v. Kelley-Dempsey & Co.,* 111 F.2d 247, 249 (10th Cir. 1940); 4 Williston on Contracts § 619 (3d ed., 1961). To interpret the agreement as suggested by the defendants, however, would render meaningless the lengthy and specific elaboration of "sufficient" cause for discharge contained in article 6 of the agreement. The only rational purpose of the provision is to grant the employer an absolute right to terminate an employee for serious misbehavior, including "persistent tardiness or absence, dishonesty, negligence, incompetence, insubordination, intoxication while on duty . . ." Bargaining Agreement, para. 6.01. But as the court stated in *Textile Workers Union v. American Thread Co.,* 291 F.2d 894, 899 (4th Cir. 1961):

> "The reservation of a right to either discipline or discharge for cause would be wholly ineffective and meaningless if the employer's action, pursuant to such right, is subject to review by an arbitrator on the basis of appropriateness. If the reserved right is construed to mean that the employer can take no disciplinary action in excess of a reprimand, except at its own risk and subject to severe penalties in case an arbitrator should later be of the opinion that some milder action is appropriate, the effect would be that the employer's inherent right which has not been expressly relinquished by contract is no right at all."

To differentiate between the terms "sufficient" and "just" as used in the contract would in effect reduce the first ninety words of the clause to eleven: "No employee shall be suspended, demoted, or dismissed without just cause." Such an interpretation does not "draw its essence" from the agreement but in effect re-writes the contract by deleting material portions of its language.

Second, defendant contends that the arbitrator's award should be upheld because of the arbitrator's alleged finding that "in every prior case involving similar, or more serious, acts of insubordination, the guilty employee was only suspended." Defendant's Brief at 10. This is a misreading of the arbitrator's opinion, for as noted earlier the arbitrator's sole finding on the subject was that "a number" of cases had resulted in lesser penalties. This is far from the quasi-official policy of leniency found to be a waiver of a similar clause in *United Furniture Workers v. Virgo Mfg. Corp.,* 257 F.Supp. 138 (E.D.Ark.1962), relied upon by defendant. It is readily apparent from the arbitrator's opinion that he did not seek to base his award upon any theory of waiver, nor would his findings support such a theory.

Third, defendant argues that the grievant's insubordination was provoked by the prior behavior of his supervisor. It is true that the arbitrator found that a long standing feud existed between the worker and his supervisor. However, where the bargaining agreement specifically allows termination for insubordination and where the arbitrator has expressly labelled the employee's behavior as insubordinate, neither the court nor the arbitrator has authority to second guess the company's decision to discharge the employee. *Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692 (10th Cir. 1977). There is no suggestion that the discharge of Sanchez for insubordination was a mere pretense to disguise a personal vendetta on the part of the supervisor, nor that Sanchez was vindictively singled out for harsher treatment than would have been afforded an insubordinate co-worker.

## ORDER

IT IS ORDERED that the plaintiff's motion for summary judgment vacating the arbitrator's award is granted; the defendants' motion for summary judgment is denied, and the defendants' counterclaim shall be dismissed with prejudice.