**WILLIAMS PIPELINE COMPANY,**
**Plaintiff,**

v.

**OIL, CHEMICAL AND ATOMIC WORK-**
**ERS INTERNATIONAL UNION and**
**its Local 5–348, Defendants.**

No. 78–C–284–D.

United States District Court,
N. D. Oklahoma.

May 14, 1979.

Carl Hall, Jr., Tulsa, Okl., for plaintiff.

Thomas D. Frasier, Tulsa, Okl., Robert E. Wages, Denver, Colo., for defendants.

### ORDER

DAUGHERTY, District Judge.

The Court has before it for consideration Plaintiff's Motion for Summary Judgment on its Complaint and Defendants' Motion for Summary Judgment on their Counterclaim. The Court has carefully reviewed the entire file, the briefs, authorities and the Recommendations of the Magistrate, and is fully advised in the premises.

This is an action brought pursuant to Section 301(a) of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a). Plaintiff, an employer engaged in commerce within the meaning of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185 and 29 U.S.C. § 152(2) and (6), seeks to review and vacate a portion of an arbitration award. Defendants, labor organizations representing employees in an industry affecting commerce as defined by 29 U.S.C. § 152(3) and (5), seek to enforce said award.

Plaintiff and Defendants are parties to a collective bargaining agreement which provides for wages, hours and other conditions of employment. The collective bargaining agreement also provides, in Article XII, Paragraph 3, thereof that:

"The Company reserves the right to discharge, suspend or lay off an employee for just cause."

On or about September 28, 1977, Plaintiff discharged several employees for the theft of gasoline from Plaintiff's pipeline. Pursuant to the grievance procedure provided in the collective bargaining agreement, the Defendants processed a grievance challenging the discharges to arbitration. At the time of the arbitration hearing, Plaintiff and Defendants stipulated two issues: (1) With respect to the employees who had admitted to the theft of gasoline, the issue was whether the penalty of discharge was too severe for the offense committed; and (2) With respect to the employees who did not admit theft of gasoline, the issue was whether the employees were discharged for just cause. The parties then stipulated that these issues were properly before the Arbitrator.

On July 3, 1978 the Arbitrator rendered his decision in which he found that seven employees who had previously admitted stealing gasoline were in fact guilty of the alleged misconduct and went on to rule that the penalty of discharge was too severe and without just cause after considering all of the circumstances involved in the case. The

Arbitrator ordered the reinstatement of the seven employees without back pay or seniority for the period from date of discharge to date of reinstatement. Effectively, the Arbitrator substituted an approximate eight (8) month suspension in lieu of discharge. Other aspects of the Arbitrator's award are not here in issue.

The power of the Court in reviewing an arbitration award is strictly limited. As the court said in *Mistletoe Express Service v. Motor Expressman's Union*, 566 F.2d 692, 694 (10th Cir. 1977):

> The narrow scope of judicial review of arbitration awards was outlined by the Supreme Court in the Steelworkers trilogy, *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The courts may not review the merits of a grievance or an award. . . . An arbitration award will be enforced if "it draws its essence from the collective bargaining agreement." . . . In determining whether an award draws its essence from the Union contract, the courts have applied various tests. An arbitrator's award must be upheld unless it is contrary to the express language of the contract, . . . or unless it is "so unfounded in reason and fact, so unconnected with the working and purpose of the . . . agreement as to 'manifest an infidelity to the obligation of the arbitrator' " . . . . The award does not draw its essence from the agreement if "viewed in the light of its language, its context, and any other indicia of the parties' intention," it is without rational support.

See also *Fabricut, Inc. v. Tulsa General Drivers, Warehousemen and Helpers Local 523*, 597 F.2d 227, 10th Cir. (1979); *International Brotherhood of Electrical Workers, Etc. v. Professional Hole Drilling, Inc.*, 574 F.2d 497 (10th Cir. 1978); *Campo Machining Co. v. Local Lodge No. 1926, Etc.*, 536 F.2d 330 (10th Cir. 1976).

In the *Fabricut* case, *supra*, several employees were discharged for failing to work the mandatory overtime assigned by the company. Grievances were instituted, and the dispute submitted to an Arbitrator. The Arbitrator "held that the company did not have just cause for the discharges, reduced the penalty to a one-month suspension, and directed Fabricut to reinstate the employees with seniority, back pay, and accrued benefits to the end of the suspension period." 597 F.2d at 228. In affirming the district court's decision upholding the Arbitrator's award, the Circuit Court distinguished *Mistletoe*:

> In Mistletoe we set aside an arbitration award which reduced a penalty from discharge to suspension. In that case there was a violation of a specific contract provision which expressly provided for discharge. In the case at bar no such provision is presented. Instead there is a contract violation which carries no stated penalty. The Arbitrator correctly rejected the employer-imposed penalty. In the light of the declared purposes of the grievance and arbitration procedure and under the powers given to the Arbitrator, he had the power to fashion what he deemed a proper penalty. When viewed in the light of the entire agreement, its context, and intent, the Arbitrator's award has rational support. *Mistletoe*, 566 F.2d at 694. We accept and affirm the award.

597 F.2d at 230.

In the present case the Arbitrator found that the discharge of certain employees was "too severe and without just cause." Award, at 10. The Arbitrator also concluded that while the discharged employees had in fact stolen gasoline from the company, the circumstances required disciplinary action short of discharge:

> The arbitrator would have little difficulty in sustaining these discharges were it not for the involvement of the supervisors. It was evident from the testimony of all of the employees who admitted the theft of gasoline that most employees believed that supervisors were aware of

the taking of gasoline that was going on. We do not have many details of the involvement of supervisors. The Company stated at the hearing that the four supervisors were discharged either for participating in theft of gasoline or being aware of it and not doing anything about it.

One supervisor testified at the hearing. Mike Rinehart had been a bargaining unit employee at Kansas City, was then sent for training to Columbia, Missouri, and then returned to Kansas City as a supervisor. Rinehart admitted that he stole gasoline as a bargaining unit employee. He also admitted that he was aware that employees were taking gasoline when he came back as a supervisor. Incredible as it may seem, Rinehart testified that he was too busy to do anything about the stealing of gasoline. All that would have been required probably was the posting of a notice stating that regardless of what the practice had been in the past, anyone caught taking gasoline from the pipeline would be immediately discharged.

It is evident from the testimony of the grievants that while they regarded the taking of gasoline as wrong, they nevertheless believed that this was permitted by the Company providing it was taken in small amounts from time to time. The supervisors were responsible for enforcing the employee rules. This they did not do. There is no evidence that during this long period of time there was any disciplinary action taken at the Kansas City terminal and pumping station with regard to stealing of gasoline. The supervisory staff must set the climate for employee behavior.

At least two of the grievants testified with regard to the attitude and activities of terminal Superintendent Forbes, who was not discharged. Forbes had been chief engineer. One grievant testified that Forbes joked about the taking of gasoline by employees, referring to what he called the "Oklahoma credit card". The "Oklahoma credit card" was a five gallon can and a piece of hose. Oklahoma referred to the headquarters of the Company in Tulsa, Oklahoma. Whether or not this particular testimony is true is not perhaps important. But, it does represent the attitude of the supervisors generally.

The arbitrator finds it difficult to believe that any of the supervisors were unaware of the taking of gasoline. It seems unlikely that a practice so widespread over a period of some five years would be unknown to any supervisor. If so, there would seem to be a need for supervisory training. In view of the climate created by these supervisors, and their failure to enforce employee rules of conduct, in order to justify discharge the Company should have put these employees on notice that henceforth the rules would be enforced.

Award at 8–9.

Plaintiff argues that by reason of Article XII, Paragraph 3 of the collective bargaining contract, the penalty to be imposed was entirely discretionary with the company, subject only to the Arbitrator's determination that "just cause" existed. The Arbitrator, however, specifically concluded that the circumstances surrounding the stealing of gasoline were such that "just cause" for the company's actions did *not* exist. In arguing that the Arbitrator's Award interferes with the company's discretion in imposing sanctions on employees, the company overlooks the fact that it agreed to have the Arbitrator determine the propriety of the sanction imposed:

The Company and the Union agreed upon the issue in the case of the seven employees who admitted that they committed a theft of gasoline from the Company. The agreed issue was whether the penalty of discharge was too severe for the offense committed.

The Company and the Union also agreed upon the issue in the cases of Green and Bozarth, who did not admit guilt of theft of gasoline. The issue agreed upon was: Were the grievants discharged for just cause.

The parties then stipulated that these issues were properly before the arbitrator for decision.

Award at 7.

The Arbitrator's decision and Award shows that he carefully considered this dispute. The Court cannot say that the Arbitrator's decision was "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." *Safeway Stores v. American Bakery and Confectionary W.I.U., Local 111*, 390 F.2d 79, 82 (5th Cir. 1968); *International Union of Electrical, Radio and Machine Workers, AFL–CIO v. Peerless Pressed Metal Corp.*, 489 F.2d 768 (1st Cir. 1973).

The Court is, for the foregoing reasons, of the opinion that Plaintiff's Motion for Summary Judgment should be overruled and Defendants' Motion for Summary Judgment sustained. The Findings and Recommendations of the Magistrate are adopted insofar as they are consistent with the opinions expressed herein.

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Summary Judgment be and the same is hereby overruled and Defendant's Motion for Summary Judgment be and the same is hereby sustained.

IT IS FURTHER ORDERED that Plaintiff offer immediate reinstatement to their former jobs the seven employees involved in this case; and that Plaintiff make each employee whole for lost compensation from the date of its refusal to abide by said award until the date of reinstatement or if any of the employees decline reinstatement to the date such employee(s) are to return to work for Plaintiff; and that Plaintiff shall make each employee whole for loss of seniority, pension credits, and all other contractual benefits loss of which said employees suffered due to Plaintiff's failure to abide by the arbitration award from the date of Plaintiff's refusal to abide by said award until the date of reinstatement or if any of said employees decline reinstatement to the date such employee(s) are to return to work for Plaintiff.