**SUPER TIRE ENGINEERING COMPANY, a corporation of the State of New Jersey, Plaintiff,**

v.

**TEAMSTERS LOCAL UNION NO. 676, Affiliated with the International Brotherhood of Teamsters, Defendant.**

**Civ. A. No. 82–1900.**

United States District Court, D. New Jersey.

Sept. 13, 1982.

548

Apruzzese & McDermott, P.A. by Vincent J. Apruzzese, Springfield, N.J., for plaintiff.

Tomar, Parks, Seliger, Simonoff & Adourian, P.A. by Barry M. Bennett, Haddonfield, N.J., for defendant.

## OPINION

COHEN, Senior District Judge:

This action to vacate an arbitration award is presently before the Court on plaintiff's motion for summary judgment and defendant's cross motion for summary judgment to enforce the award. Jurisdiction is vested pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 (1973), § 185 (1978).

Plaintiff (Company) operates a tire manufacturing plant in Pennsauken, New Jersey. Both plaintiff and defendant (Union) are parties to a collective bargaining agreement which contains a grievance procedure providing for arbitration of disputes regarding interpretation of the agreement.[1]

---

1. The contract, in Article 6, Section 1, provides that "all grievances or disputes arising under the terms of this Agreement shall be handled in

The grievance at issue involves the discharge by the Company of one of its employees, Mitchell Gray.

On August 31, 1981, Gray was observed drinking beer on the plant premises by the maintenance director and refused to obey his direction to leave the grounds. The Company discharged Gray on August 31, 1981 and so notified him, on that date, by means of the following correspondence:

This is to inform you that you are being terminated from our employ effective Friday, September 4, 1981.

*The cause of the termination is for drinking alcoholic beverages on Company premises and for drinking during working hours.* (Emphasis added).

After discussing the matter with the Union's Business Agent, the Company voluntarily modified its original decision to terminate Gray. At oral argument, it was indicated that the Company's decision was prompted by the prospect of pursuing the case through the grievance procedure. On September 4, 1981, Gray was sent the following notice:

This is to inform you that the letter dated August 31, 1981 is being rescinded and you are being suspended from work for one day in lieu of termination....

*Please remember that there is to be no drinking of alcoholic beverages on Company premises nor during working hours.* (Emphasis added).

After Gray returned to work, it was reported that he continued to drink alcoholic beverages during his break periods. This information caused the Company to hire a detective agency to keep Gray under surveillance. Two investigators reported that they observed Gray drinking alcoholic beverages on several occasions during September and October 1981 at the nearby Dew Drop Inn and in cars parked around the Inn. On October 31, 1981, Gray was again discharged for consuming alcohol during working hours. The termination was taken to arbitration and heard by arbitrator, Thomas F. Carey, who issued his decision on April 20, 1982.

Initially, the arbitrator made the finding that Gray was drinking alcoholic beverages during his break periods. (Award p. 11). From an examination of the contract, he determined that "'break periods' fall within the time prescribed as 'working hours'." (Award p. 12). Consequently, the arbitrator concluded that Gray was guilty of drinking alcoholic beverages during working hours. (Award p. 11).

Arbitrator Carey then confronted the question of whether Gray was properly discharged under Article 15, Section 1 [2] of the collective bargaining agreement. He found that the Company was justified in taking some disciplinary action against Gray but that discharge was "too severe absent proper notice to [sic] the no drinking rule." (Award p. 11). The arbitrator deemed a four month disciplinary suspension without pay to be an appropriate penalty. (Award p. 17).

The arbitrator reached his decision that discharge was inappropriate in this case by an analysis of the "just cause" language of the aforesaid Article 15, Section 1. According to the arbitrator, this provision requires that the Company's action under Article 15 be exercised in a fair and even manner, rather than in an arbitrary and capricious fashion. (Award p. 13). He concluded that the Company's intent to strictly apply the no drinking rule required that the employee

the manner provided [in the grievance provisions.]"

2. No employee may be discharged or suspended without just cause.... Until the case has been discussed with the Business Agent, no employee may be dismissed or suspended except where the provisions of the Section provide for immediate dismissal.... *Except in the case of immediate dismissal for the causes set forth below, no employee may be dismissed or suspended for his first offense but shall receive at least one written warning .... The parties agree that causes for dismissal without first discussing the matter with the Business Agent shall be the following:*

*(2) Drunkenness, proven drinking during working hours, or being under the influence of alcohol ... during working hours.* (Emphasis added).

be given advance notice; inasmuch as there was no evidence presented that any other employee had previously been discharged for drinking alcoholic beverages, an express warning should have been given to Gray before he was discharged. (Award pp. 13–14). The arbitrator held that the notice given to Gray on his prior discharge and reinstatement was insufficient because it failed to *specifically* inform him that his continued alcohol consumption on Company time would result in his discharge. (Award p. 14).

In arriving at this decision, Arbitrator Carey also took into consideration Gray's thirteen year work record which listed the August 31, 1981 warning as his only violation of the Company's rules.[3] "To dismiss an employee of many years for a second offense, without proper warning of potential discharge, normally presumes a degree of consistency by the Company in handling similar infractions involving the work force." (Award pp. 15–16). Since no uniform rule had been formulated regarding application of the no drinking provision and since Gray had not been told categorically that he would be fired for a second offense, "just cause" for discharge did not exist. (Award p. 16).

In this case, the Company's position is essentially that the arbitrator's award should be vacated because it is not supported under any interpretation of the contract. The Company reasons that, since the agreement expressly provides that an employee may be immediately discharged without warning for drinking on the job, the arbitrator's interpretation of the "just cause" provision to require a warning before discharge is contrary to the contract language. Alternatively, even if a warning is required, the letter of August 31, 1981,

which rescinded Gray's discharge and cautioned him about his continued drinking on the job, constituted sufficient notice under any rational construction of the contract.[4]

■ It is well established that the scope of the Court's review of an arbitration decision is extremely limited and that an award is considered legitimate if it "draws its essence from the contract." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

> [A] labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and, other indicia of the parties' intention; only where there is manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Johnson Bronze v. Intern. U. of United Auto, Etc.,* 621 F.2d 81, 82 (3d Cir. 1980) (quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969)).

■ Generally, an arbitrator is given wide latitude in construing a collective bargaining agreement. It is irrelevant whether the Court agrees with the arbitrator's application and interpretation of the agreement. *NF&M Corp. v. United Steelworkers of America,* 524 F.2d 756, 760 (3d Cir. 1975). The fact that an arbitrator misconstrued the contract does not open the award to judicial review. *Ludwig,* 405 F.2d at 1128. However, an arbitrator's decision cannot be upheld if his construction of the contract manifests a disregard of its express provisions. *Mistletoe Exp. Serv. v. Motor Expressmen's U.,* 566 F.2d 692, 695 (10th Cir.

---

3. The Court recognizes that a dispute exists regarding Gray's work record, but for purposes of this opinion we will assume, as did the arbitrator, that Gray had committed no other infractions against the Company during his thirteen years of service.

4. The Company also contends that the arbitrator exceeded his authority in changing Gray's termination to a suspension, (*see,* Article 15,

Section 1), and in giving the employer credit for compensation earned by the employee in outside employment while he was suspended. (*Id.*) The Court considers these assertions as further allegations of the arbitrator's disregard of the collective bargaining agreement. In light of our ultimate decision in this case, we find it unnecessary to decide these issues.

1977); *Amanda Bent Belt Co. v. International U., U.A., A.I.W.,* 451 F.2d 1277, 1280 (6th Cir. 1971); *Truck Drivers & Helpers Union 784 v. Ulry-Talbot Co.,* 330 F.2d 562, 566 (8th Cir. 1964).

■ In this case, the arbitrator read the "just cause" provision to govern all discharges under the contract. His decision that the "just cause" requirement controls even specific provisions regarding discharge is not open to question by this Court. *Arco-Polymers, Inc. v. Local 8–74,* 671 F.2d 752, 756 (3d Cir. 1982). Therefore, after he determined that the Company had complied with the specific contract provisions, the arbitrator was empowered to determine whether or not there existed "just cause" for discharge.

■ An arbitrator's finding that the "just cause" provision controls, authorizes him to apply all the surrounding facts and circumstances to determine whether or not a discharge is warranted. *Id.* Additionally, "*[i]n a proper case,* an arbitrator . . . may construe a 'just cause' provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is 'just cause' for discipline but not for discharge." *Id.* (quoting *Mistletoe, supra* 566 F.2d at 695) (emphasis added). However, the progressive discipline mandated by the arbitrator here, i.e., a prior written warning, is directly contrary to the contract language and cannot be sustained. *Mistletoe,* 566 F.2d at 695.

As previously noted, Article 15, Section 1 of the agreement provides that "[e]xcept in the case of immediate dismissal for the causes set forth below[5], no employee may be dismissed or suspended for his first offense but shall receive at least one written warning."[6] This provision recognizes the need for warning employees of potential disciplinary action in most instances but expressly grants the Company the power to dispense with the warning when discharging an employee for the enumerated offenses. It seems likely that the Company bargained for the immediate discharge provision because it considered such a clause necessary for the protection of the Company's employees and its premises.

■ The arbitrator's determination that a warning may be required in the instant case, nullifies this provision and, in effect, rewrites the agreement of the parties. *See, Mistletoe, supra* 566 F.2d at 695. In practical terms, Arbitrator Carey's decision means that the employer would be unable to discharge an intoxicated employee for his first offense but would instead be compelled to first warn the employee and then terminate his employment only after he was found to be intoxicated a second time. In the interim, the remainder of the work force would be exposed to the risk of injury caused by a drunken employee operating heavy equipment. Such a result certainly would not give effect to the "parties' intention" and cannot be sustained.[7] *Ludwig, supra* 405 F.2d at 1128.

---

**5.** The causes include the following:
(1) Calling or participating in any unauthorized strike, work stoppage, or walk-out.
(2) *Drunkenness, proven drinking during working hours, or being under the influence of alcohol or unlawful narcotics during working hours.*
(3) Theft or dishonesty.
(4) Assault on his Employer or his Employer's representative during working hours.
(5) Carrying unauthorized passengers in Employer's vehicle.
(6) Assault by an employee against his fellow workers during working hours.
(7) Deliberate vandalism or defacing Company property and equipment, or, in this case, in lieu of discharge, financial action may be taken against the employee.
(Emphasis added).

**6.** Although an arbitrator is not required to state his reasons for rendering a decision, *see, Virgin Islands Nursing Association's Bargaining Unit v. Schneider,* 668 F.2d 221, 222 (3d Cir. 1981), we note that this provision is never specifically addressed in Arbitrator Carey's otherwise detailed opinion.

**7.** Although the Court agrees with the Company's contention that the warning given to Gray was sufficient under any reading of the contract, this constitutes a factual determination of the arbitrator which is not open to judicial review. *Ludwig, supra,* 405 F.2d at 1128; *Parsons v. Blue Ridge-Winkler Textiles,* 517 F.Supp. 422, 425 (E.D. Pa. 1981). Consequently, our opinion does not review the arbitrator's decision on this issue.

In arriving at our decision, this Court is mindful that in *Arco-Polymers, supra,* the Third Circuit Court of Appeals reached a different result when faced with a somewhat similar but distinguishable factual situation. The collective bargaining agreement in that suit provided, in pertinent part: "Employees absent from work without good and sufficient cause for more than four (4) consecutive days shall be subject to discharge.... Employees shall be discharged only for just cause." 671 F.2d at 752–753. The court of appeals upheld an arbitrator's decision which reinstated an employee who had been absent from work for nineteen (19) days without justification. 671 F.2d at 758.

Since the arbitrator's opinion in *Arco-Polymers* was unclear, the court of appeals discussed the possible bases of his decision. Initially, the court decided that the provision which allowed the Company to discharge an employee for unauthorized absences could have been construed as nonmandatory and one which does not necessarily give management complete discretion regarding discharges. *Id.* In light of these findings, the court held that the arbitrator may have determined that all discharges were subject to the "just cause" provision. *Id.* Consequently, the arbitrator was permitted to apply the surrounding facts and read into the contract a progressive discipline requirement in deciding if "just cause" existed. *Id.*

The present case, however, is distinguishable from *Arco-Polymers* in several crucial respects. Imposition of a progressive discipline procedure in *Arco-Polymers* did not require an employer to perform an act, i.e. issue the employee a written warning before discharge, from which he was specifically exempted under the contract. That is exactly the duty imposed on the employer in the instant situation. Additionally, there was no indication in *Arco-Polymers* that the parties had agreed to use progressive discipline in some instances and not in others.

In this case, the contract manifests just such an agreement. Finally, and perhaps most importantly, the court's decision in *Arco-Polymers* did not result in the elimination of a specific contract provision. In our opinion, the immediate discharge clause in this case will be rendered meaningless if the arbitrator's decision is upheld.

The Court can only assume that this provision was included in the agreement as a result of collective bargaining between the parties. Given the size of the Company and the sophistication of the Union, it is likely that both parties were represented by experienced negotiators who engaged in the bargaining contemplated by the National Labor Relations Act in order to gain the provisions favorable to them. It would certainly subvert the purpose of the Act and frustrate the intention of the parties to allow an arbitrator to alter the contract provisions to which the parties had previously agreed.

Although the court in *Arco-Polymers* recognized use of the "just cause" provision to impose a progressive discipline requirement in the particular factual situation presented there, it did not sanction such an interpretation in every instance. In light of the aforementioned distinctions, this Court is of the opinion that application of the *Arco-Polymers* rationale is unwarranted in the case at bar.[8]

For the foregoing reasons, we hold that the arbitrator's award does not draw its essence from the collective bargaining agreement and must be vacated. Plaintiff's motion for summary judgment shall be granted and defendant's cross motion for summary judgment shall be denied.

---

**8.** It should be noted that we do not hold that the arbitrator was not empowered to consider the surrounding facts and circumstances when determining whether Gray was discharged for "just cause"; only that he was not authorized to impose on the employer a warning requirement, in light of the contract provision to the contrary.