**PUBLIC SERVICE COMPANY OF COLORADO, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 111, Defendant.**

**No. 88–C–1150.**

United States District Court, D. Colorado.

March 31, 1989.

Donald P. MacDonald, Hornbein, Mac-Donald, Fattor and Hobbs, P.C., Denver, Colo., for plaintiff.

David W. Kerber and Salie B. O'Malley, Kelly, Stansfield & O'Donnell, Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

Plaintiff Public Service Company of Colorado instituted this action to set aside an arbitration award under the parties' collective bargaining agreement. Defendant International Brotherhood of Electrical Workers, Local Union 111 has counterclaimed to compel specific performance of the award. The parties have filed cross motions for summary judgment, and have stipulated that no trial is necessary in this case.

All issues have been fully briefed and oral argument would not facilitate the decision process. Jurisdiction is based on § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a).

## I. *Factual Findings.*

The following facts are undisputed. Plaintiff is a Colorado corporation engaged in the general business of providing gas and electric utility service and has its principal place of business in the City and County of Denver, Colorado. Defendant is a labor organization as defined by the Labor Management Relations Act of 1947, 29 U.S.C. § 152(5). At all times material to this suit, the defendant represented the plaintiff's employees. Plaintiff and the defendant were parties to a collective bargaining agreement ("the agreement"), as amended, for the period December 1, 1984 until December 1, 1986.

In 1985, the plaintiff began construction on a Materials Distribution Center ("MDC") that would centralize into one location the distribution functions of the electrical and gas service centers and the storage of maintenance and construction materials. In September 1985, the plaintiff notified the defendant that it wanted to engage in mid-term bargaining to negotiate the staffing of certain MDC positions. The parties subsequently entered into an interim agreement regarding the opening of the MDC.

In 1986, a grievance was filed concerning the custodial or janitorial work performed at the MDC administrative offices. On January 6, 1988, the grievance was heard by a board of arbitration comprised of one union appointed member, one company appointed member and one neutral member. According to the parties' stipulation, the following issue was presented for arbitration:

"Did the Company (the plaintiff) violate the collective bargaining agreement when the Company subcontracted work of custodians to non-bargaining unit employees at the Materials Distribution Center facility? If so, what is the appropriate remedy?"

After a hearing on January 6, 1988, the arbitration decision was rendered on May 12, 1988 by the neutral board member, with one concurrence and one dissent. The grievance was upheld and the plaintiff was directed to use bargaining unit personnel to

perform all custodial work at the MDC facility.

## II. *Legal Discussion.*

■■■ Judicial review of an arbitration award is narrowly confined, and the award will be upheld if "it draws its essence from the collective bargaining agreement." *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *see also Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Whether the award draws its essence from the agreement is assessed as follows:

"An arbitrator's award must be upheld unless it is contrary to the express language of the contract, . . . , or unless it is 'so unfounded in reason and fact, so unconnected with the wording and purpose of the * * agreement as to 'manifest an infidelity to the obligation of the arbitrator.' . . . The award does not draw its essence from the agreement if 'viewed in the light of its language, its context, and any other indicia of the parties' intention,' it is without rational support.' " (citations omitted). *Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692, 694 (10th Cir.1977).

The court may not review the merits of a grievance or an award. *Id.* "So long as the arbitrator reasons from his factual findings to his conclusion, and limits himself to interpreting and applying the agreement, a court must give great deference to the arbitrator's decision." *Campo Mach. Co. v. Local Lodge No. 1926,* 536 F.2d 330 (10th Cir.1976). *See also, United Food and Commercial Workers Int'l v. Gold Star Sausage Co.,* 487 F.Supp. 596 (D.Colo. 1980).

■■■ In the instant case, the arbitration board determined that the plaintiff had the right under the agreement to subcontract the MDC custodial work and that the parties had reached no agreement concerning the hiring of bargaining unit custodians. The board further held, however, that the plaintiff's proposal, during the parties' in-terim negotiations, to use one or two unit custodians at the MDC facility, along with the plaintiff's failure to express its intention to subcontract additional evening custodial work, reasonably led the defendant to believe that all custodial work was to be performed by bargaining unit personnel. The board's decision states as follows:

"The Board finds that there was no genuine meeting of the minds. Both parties left the bargaining table with distinctly different understandings of what had been orally agreed upon. In most situations, this finding would necessitate a conclusion that in fact there was no agreement on custodial work and that therefor the Company was free to contract out the work as it saw fit. However, . . . the Board finds that the application of the principle of equitable estoppel requires a different result."

"The Company understood from the very first negotiating session that the Union objected strongly to the contracting out of custodial work. . . . In order to get the Union off this issue and save the agreement, the Company abandoned its original position that all of the work would be contracted out and agreed to the use of bargaining unit personnel for day custodial work. Instead, Goodwin said only that the Company would use one or two unit custodians in accordance with flow chart 14. . . . Thus, the Union understood Goodwin's statement to mean that all of the custodial work would be performed in accordance with flow chart 14."

"[T]he Board does find that the proposal as made by the Company was an incomplete and inaccurate statement of the true Company position. The Union's understanding of the proposal was entirely reasonable. Based on its previous position and past negotiations on the subject, the Union was justified in assuming that if the Company intended to contract out a portion of the custodial work, such intent would have been made clear in the Company's proposal."

"The evidence indicated that the Union relied on this interpretation in agreeing

to the Company proposal, and that such reliance was to its detriment. The Union had adhered to its original position on this issue and went forward with the entire agreement based on its belief that the custodial work at MDC would be performed by bargaining unit personnel. The testimony of Union witnesses indicated that had they understood that the Company intended to contract out night custodial work, they would not have accepted the proposal." Stipulated Record, Exhibit 1 at 9–11.

Plaintiff contends that the arbitration board exceeded its authority, and acted arbitrarily and capriciously, because the parties' agreement is silent regarding the hiring of bargaining unit custodians. Plaintiff emphasizes that the MDC houses millions of dollars worth of equipment and supplies and that it is justifiably concerned with security. Plaintiff asserts that to minimize its security concerns, it determined that night custodial work would be performed on short shifts, and this decision was not an attempt to lay off or demote bargaining unit personnel.

Specifically, article 19, section 9(a) of the agreement covers subcontracting and provides that the plaintiff will not contract out work ordinarily done by its regular employees for the specific purpose of laying off or demoting those employees. Section 9(a) further provides that prior to awarding a contract for any major type of project that ordinarily has not been contracted in the past, the plaintiff will advise the contractor that the contractor's employees shall not be paid less than the wage scale provided in the agreement. Plaintiff contends that the board's decision that all MDC custodial positions be staffed by full-time employees is arbitrary and capricious. Further it argues that, since subcontracting out custodial work was not prohibited in the agreement, the board's decision does not draw its essence from the collective bargaining agreement and should be set aside.

I have thoroughly reviewed the stipulated record and considered the parties' arguments. I conclude that the arbitration board's decision is firmly grounded on the evidentiary facts presented at the hearing. I further conclude that the plaintiff should have clarified its position concerning the use of bargaining unit personnel during the interim negotiations. Although the parties' agreement does not specifically address this issue, I can not find that the board's ruling exceeds its authority. Based on the evidence presented at the hearing, I am not convinced that the board's decision does not draw its essence from the agreement, or that its conclusion is without foundation in reason or fact.

A party is entitled to summary judgment when there is no genuine issue as to a material fact and judgment should be entered in its favor. Rule 56(c), Fed.R.Civ.P. Defendant's motion for summary judgment is granted.

I do not conclude that the plaintiff filed the instant lawsuit in bad faith, vexatiously, wantonly or for oppressive reasons. Defendant's prayer for costs, expenses, and attorneys' fees as sanctions against the plaintiff is denied.

Plaintiff's motion for summary judgment is denied.

Accordingly, it is ORDERED that:

(1) Defendant's motion for summary judgment is granted and the defendant is entitled to specific performance of the arbitration award;

(2) Defendant's prayer for costs, expenses and attorney's fees as sanctions against the plaintiff is denied; and

(3) Plaintiff's motion for summary judgment is denied.