**SWINERTON & WALBERG CO., Plaintiff,**

v.

**UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA LOCAL # 3, aka Journeymen Plumbers and Gasfitters Local Union # 3, and United Association of Journeymen and Apprentices of Plumbing and Pipefitting Industry of the United States and Canada Local # 208 aka Pipefitters Local # 208, Defendants.**

**Civ. A. No. 92–K–1737.**

United States District Court, D. Colorado.

Nov. 16, 1992.

Ellen M. Kelman, Denver, Colo., for plaintiff.

William F. Schoeberlein, Denver, Colo., for defendants.

MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This case is before me on the defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and for sanctions against the plaintiff and his counsel under rule 11. I have jurisdiction to hear the case pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Swinerton & Walberg Co., ("Swinerton" or "coordinator"), is a labor relations coordinator under a project labor agreement ("agreement" or "PLA") at the Department of Energy Rocky Flats facility. It filed a complaint on September 1, 1992 to vacate a decision and award of an arbitrator. The arbitrator concluded both that the defendants, two local plumbers and pipefitters unions ("unions"), had timely made a request for arbitration pursuant to the

PLA, and that certain piping specialists who use a respirator should be paid the same higher wage as piping specialists who use a self-contained generator or tank for oxygen or air. Swinerton's complaint asserts that the arbitrator exceeded his powers and jurisdiction concerning the timeliness of the request for arbitration and modified, amended or altered the PLA in determining that a higher wage should be paid to piping specialists who use a respirator. For the reasons discussed below, I affirm the motion for judgment on the pleadings, but do not assess any sanctions against plaintiff.

### I. Facts and Procedural Issues

Swinerton has been the labor relations coordinator at Rocky Flats since June 12, 1973. On that date it entered into the project labor agreement at issue here on behalf of all construction employers on the project. The unions were signatories to the agreement. The PLA included a grievance and arbitration procedure for resolution of grievances arising on the project.

Article XX(3)(a) of the agreement provides a three step grievance resolution procedure. In the third step, the "Union may request a Grievance Board of Adjustment review ... by delivering a written notice to the EMPLOYER [and] COORDINATOR...." Article XX(3)(c).[1] The grievance board of adjustment (GBA) consists of four representatives, and can settle a grievance only by three unanimous votes "favoring the determined outcome. Otherwise the grievance shall be deemed not settled." *Id.*

When the GBA is unable to settle the grievance, the union may request arbitration within fifteen working days "immediately following the [GBA's] vote" by delivering an appropriate written notice to the concerned parties. Article XX(3)(d). Decisions by the GBA and the arbitrator must "be submitted in writing and shall be final and binding on all the parties." Article XX(3)(f). Neither the GBA nor the arbitrator has "the authority to modify, amend, alter, add to or subtract from any provision

of" the agreement. *Id.* Article XX(3)(G) provides as follows:

> A grievance shall be considered null and void if not filed and processed by the UNION or the employee represented by the UNION in accordance with the time limitations set forth above unless the parties involved agree to extend said time limitations. The arbitrator shall not have the authority to excuse a failure by the UNION or the aggrieved employee to comply with the time limitations set forth above regardless of the reason for such failure.

The unions filed a grievance in 1991 concerning the appropriate level of pay for certain pipefitters who wear respirators but not self contained breathing apparatuses. The contract provision at issue provided:

> 1. The wages of the piping specialist shall apply and be paid to those employees who require any of the following:
> a. Protective clothing over the entire surface body ... and,
> b. any outside source of breathing air, such as, but not limited to, a self-contained generator or tank for oxygen or air, or a respiratory device developed for use in lieu of such generator or tank.

(Emphasis added). The coordinator understood "in lieu of" in the emphasized language as an adjectival phrase to mean "as a substitute for" a self-contained generator or tank for air or oxygen, thereby excluding higher pay when piping specialists used a full face, self-contained respirator. The unions understood "in lieu of" in the emphasized language in the absolute sense to mean "instead" or "instead of" a self-contained generator or tank for air or oxygen, thereby requiring higher pay for specialists using self-contained respirators.

The parties were unable to resolve the disagreement informally. In January, 1992, the union sought a hearing before the grievance board of adjustment. The GBA heard the grievance and voted on January 8, 1992, but was unable to reach consensus.

---

1. The full agreement is attached to the complaint as exhibit "A".

On February 3, 1992, Swinerton received a union letter dated January 31, 1992 requesting arbitration pursuant to Article XX(3)(g). On that same date, Swinerton advised the unions that their request for arbitration was untimely. The Grievance Board of Adjustment issued its written decision sometime after January 31, 1992.

An arbitration nonetheless commenced on June 7, 1992. The arbitrator initially determined that the unions' request for arbitration was not untimely, even though made more than fifteen days after the vote of January 8, 1992. The arbitrator construed Article XX(3)(d)'s time limitation to run from 15 days after the GBA issued its *written* decision, not fifteen days after the vote itself.

> In keeping with generally recognized rules of contractual construction favoring harmonious interpretation of possibly conflicting provisions, and reaching reasonable rather than absurd results so as to effectuate the manifested intention of the contracting parties, the Arbitrator construes ARTICLE XX, Section 3(d) relied upon by the Company as contemplating that the decisions of the Grievance Board of Adjustment shall have been submitted in writing. It is undisputed that the decision of the Grievance Board of Adjustment had not been submitted in writing to the Union even as late as January 31, 1992.

*In re Arbitration: United Association Local 3 and 208 and Swinerton and Walberg Company,* Arbitration Award at 4 (June 9, 1992).

On the substantive merits of the arbitration, the arbitrator ruled in the unions' favor. The arbitrator found the phrase "in lieu of" ambiguous, capable of meaning both "as a substitute for" and "instead" or "instead of." When he looked to the intent of the parties and the negotiative history, the arbitrator found no dispute that they parties intended "in lieu of" to mean "instead of." Finding the "manifest intention of the Agreement" governing and "binding," the arbitrator awarded qualified piping specialists back pay to October 1, 1991,

the date of the initial grievance. This appeal followed.

## II. Discussion

### A. *Standard of Review*

As I have noted before, "[j]udicial review of an award following properly conducted arbitration proceedings is extremely narrow, and an arbitrator's award will not be set aside unless it fails to draw 'its essence from the collective bargaining agreement.'" *Checkrite of San Jose, Inc., v. Checkrite, Ltd.,* 640 F.Supp. 234, 235–36, (D.Colo.1986), *quoting United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). As the Supreme Court put it, in another of the 1960 *Steelworkers* cases, "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). The Court reemphasized the deferential standard of review just recently:

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.... [A]s long as the arbitrator is even arguably construing or applying the contract ..., that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). We exercise such restraint because the arbitration award "is the product of the theoretically informal, speedy and inexpensive process of arbitration, freely chosen by the parties." 640 F.Supp. at 236. As the circuit put it: "This limited scope of review, as enunciated by the Supreme Court in the *Steelworkers* trilogy, serves well the federal labor law policy of finality in labor dis-

putes, and lends significant support to one of the principal functions of labor arbitration—the settlement of disputes amicably and quickly without judicial intervention." *United Steelworkers of America v. Ideal Cement Co.*, 762 F.2d 837, 840 (10th Cir. 1985).

Professor St. Antoine's explanation for the deferential standard is equally convincing:

> Put most simply, the arbitrator is the parties' officially designated "reader" of the contract. He (or she) is their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated unanticipated omissions of the initial agreement. Thus, a "misinterpretation" or "gross mistake" by the arbitrator becomes a contradiction in terms. In the absence of fraud or an over-reaching of authority on the part of the arbitrator, he is speaking for the parties, and his award *is* their contract.... In sum, the arbitrator's award should be treated as though it were a written stipulation by the parties setting forth their own definitive construction of the labor contract.

T. St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and its Progeny*, 75 Mich.L.Rev. 1137, 1140 (1977).

Courts have used a number of similar tests to determine whether an award draws from the "essence" of the agreement and thus is within the scope of the arbitrator's authority. As the District of Columbia circuit put: "[t]he better view is that an award will not be vacated even though the arbitrator may have made, in the eyes of judges, errors of fact and law unless it 'compels the violation of law or conduct contrary to accepted public policy,'" *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d 1234, 1239 (D.C.Cir.1971). An award should be set aside only if it is "palpably faulty", *Safeway Stores v. American Bakery and Confectionery Workers, Local*

*111*, 390 F.2d 79, 82 (5th Cir.1968); lacks "foundation in reason or fact," *International Ass'n of Machinists & Aerospace Workers, Dist. No. 145 v. Modern Air Transp., Inc.*, 495 F.2d 1241, 1244 (5th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974); shows a "manifest disregard of the agreement," *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969); is "arbitrary, capricious or not adequately grounded on the applicable collective bargaining agreement," e.g., *Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777*, 398 F.2d 735, 737 (7th Cir.1968), *cert. denied*, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969); or discloses an interpretation not "possible for an honest intellect to ... reach," *San Francisco–Oakland Newspaper Guild v. Tribune Pub. Co.*, 407 F.2d 1327, 1328 (9th Cir.1969).[2] *And see*, L. Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review*, 80 Colum.L.Rev. 267, 268–77 (1980).

Where the award sought to be overturned turns on an alleged procedural error on an arbitrator's part, the standard of review is even more deferential. "The federal courts are to give even greater deference to an arbitrator's decision on matters of procedure which arise from the dispute and bear on its final disposition." 762 F.2d at 841. Such decisions should

> not be subject to judicial second-guessing. Procedural arbitrability disputes should not be resolved by the courts, since the system's inherent delays and increased costs would significantly frustrate the aims of our national labor policy.... Speed and inexpensiveness are essential attributes of the arbitration process. In order to retain those attributes and thereby preserve the effectiveness of the arbitral system, it is incumbent upon the federal courts to recognize that the Arbitrator is in the best position to make decisions relating to and affecting the parties to the arbitration, and to

**2.** These cases are collected in *Washington Hospital Center v. Service Employees International,* 746 F.2d 1503, 1514 n. 13 (D.C.Cir.1984).

defer to the arbitrator's judgment on such matters.

*Id. And see, Interstate Brands Corp., Butternut Bread Div. v. Chauffeurs, Teamsters, Warehousemen & Helpers Local 135*, 909 F.2d 885, 889 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991) (in a question of procedural arbitrability, a court's role is even more sharply circumscribed than it is with the already highly deferential standard of review for substantive issues).

 Against this background, I have no hesitation in concluding that the arbitrator's award must be upheld. It was not unreasonable for the arbitrator to give effect to the requirement for a written decision of the Grievance Board of Adjustment in the context of the five day period within which to request arbitration. I cannot say the arbitrator's interpretation was palpably faulty, lacking foundation in reason or fact or demonstrated a manifest disregard for the agreement. There was no fraud or over-reaching on the arbitrator's part. That the coordinator or any other court might disagree with the arbitrator's interpretation is of little moment. The parties got what they contracted for—a fair reading of the contract by the party they chose as their *alter ego*.

■ I reach a similar conclusion on the merits of the arbitration. The arbitrator's decision clearly draws its essence from the parties' agreement. The arbitrator's interpretation of the phrase "in lieu of" in the contract addendum is not only "arguably correct, but inarguably so." *Defendants' Motion for Judgment on the Pleadings* at 4. I therefore grant the unions' motion for judgment on the pleadings.

I do not award fees and costs under rule 11, however. The coordinator relied primarily upon a 1977 tenth circuit decision, *Mistletoe Express Service v. Motor Expressman's Union*, 566 F.2d 692 (10th Cir. 1977). There the court upheld the district court's reversal of an arbitration award. The circuit refused to uphold the award because it contravened "the express language of the labor contract." 566 F.2d at 695.

I believe that *Mistletoe* was wrongly decided, and represents an aberrant situation where the court determined to review the merits of the underlying arbitration award, notwithstanding the lip service it paid to the narrow scope of judicial review. *And see* L. Kaden, *Judges and Arbitrators*, 80 Colum.L.Rev. at 270 (criticizing *Mistletoe* as judicial overreaching). Nonetheless, it remains good law in this circuit and provides a weak, but sufficient, basis for the coordinator's challenge in this case. I accordingly deny the request for sanctions.

The unions' motion for judgment on the pleadings is granted. Its motion for sanctions is denied.