**TRUMP PLAZA
ASSOCIATES, Plaintiff,**

v.

**HOTEL AND RESTAURANT EMPLOYEES INTERNATIONAL UNION, LOCAL NO. 54, AFL–CIO, Defendant.**

**Civ. A. No. 86–2489.**

United States District Court,
D. New Jersey.

Sept. 25, 1987.

ence.

Howard Flaxman, Peter A. Gold, Blank, Rome, Comisky & McCauley, Cherry Hill, N.J., for plaintiff.

Michael N. Katz, Marie A. Fritzinger, Meranze and Katz, Cherry Hill, N.J. for defendant.

---

## OPINION

RODRIGUEZ, District Judge.

Plaintiff, Trump Plaza Associates, formerly known as Harrah's Associates and doing business as Harrah's Trump Plaza Casino Hotel ("Trump"), filed the complaint in this action on June 25, 1985, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1947), to set aside a March 28, 1986 arbitration award. Trump owns and operates a casino/hotel with its principal place of business in Atlantic City, New Jersey. Defendant Local 54 is a labor organization representing employees and acting for the employee members through its officers and agents.

On June 27, 1986, defendant Local 54 filed an answer and a counterclaim seeking an order enforcing the arbitrator's award retroactively with interest, attorneys' fees, and costs. Plaintiff answered the counterclaim on July 8, 1986.

After moving to extend time for discovery on the ground that discovery might be unnecessary if this action were dismissed, on November 24, 1986 defendant served plaintiff with a notice of motion to dismiss. Plaintiff moved on December 12, 1986 for a continuance of defendant's motion to dismiss. Nevertheless the Honorable Jerome B. Simandle, United States Magistrate, ruled on December 23, 1986 that defendant's pending motion to dismiss would be decided before defendant would be required to respond to interrogatories.

## I

Trump began operations on May 15, 1984 and at the same time it opened "Le Grand Buffet", a buffet restaurant. Trump hired and paid the food servers in Le Grand Buffet as "tipped" food servers. On May 28, 1984 Trump signed a collective bargaining agreement with Local 54. The purpose of the agreement was to establish standards of wages, hours and other conditions of employment, and "to ensure the peaceful, speedy and orderly adjustments of differences that may arise from time to time between Employer and its employees...." (See Agreement at 1).

While each Atlantic City casino hotel signs its own contract with the Union, they bargain collectively with the Union as the Casino Hotels of Atlantic City. In the 1983 industry-wide negotiations, the casino hotels and the Union agreed upon the establishment of three new classifications, one of which is the non-tipped food server classification at issue in this case.

Article XIII of the industry-wide agreement contained the provision for new job classifications which became the subject of this grievance proceeding:

"The following new classifications and their respective wage rates were established, effective September 15, 1983. The Employer may utilize these new classifications at their option:

(a) Nontipped food servers will be paid at the same rate as the nontipped busperson classification. The nontipped food server, when required to work a package plan, will participate in the guaranteed gratuity, if any ($6.50 as of 9/15/83).

(b) Intermediate cook; rate for this classification will be $1.00 below the cook's rate ($7.91 as of 9/15/83).

(c) Relief cook sauciere; rate of pay for this classification shall be $1.00 per hour above the relief cook rate ($11.26 as of 9/15/83)."

In respect to the food server classification, the tipped rate is $3.875 as contrasted to $7.00 for the non-tipped food server September 15, 1984 rate.

The agreement provided that any grievance which might arise would be resolved

by arbitration and that "[t]he decision and award of the arbitrator shall be final and binding on the Parties." Agreement, Art. IV, ¶ 5c.

In or about October 1984, Local 54 filed a grievance protesting Trump's payment of the tipped food server rate instead of the non-tipped food server rate to workers in Le Grand Buffet restaurant.

The parties agree that Local 54's grievance was a proper subject of arbitration. In accordance with the arbitration clause, the unresolved grievance was submitted to arbitration. Extensive hearings were held on June 12, 1985, July 23, 1985, August 27, 1985 and October 3, 1985. Both parties to the arbitration proceedings were represented by attorneys who submitted briefs in support of their positions on the issues. After five months, the arbitrator rendered a decision upholding Local 54's grievance and ruling that Trump must pay Le Grand buffet food servers the non-tipped food server classification rate retroactive to the effective date of the Agreement, May 28, 1984. *Harrah's Trump Casino Hotel v. Hotel and Restaurant Employees International Union Local No. 54*, AFL–CIO, FMCS File No. 85K/06688 (1986) (Freund, Arb.). Plaintiff, dissatisfied with the results of the arbitrator's award, now comes before this court seeking to vacate the award. Plaintiff alleges:

> [T]he opinion and award failed to draw its essence from the agreement and manifested an infidelity to the agreement in that the arbitrator's interpretation cannot in any rational way be derived from the agreement, viewed in light of its language, its context or any other indicia of the parties' intent.

Trump advances three arguments: (1) Trump alleges the award is "in manifest disregard of the Agreement, totally unsupported by principles of contract construction, industry practice or the law of the shop;" (2) Trump contends that the award ignored Trump's entitlement, under Article XVIII (most favored employer), to incorpo-

rate into Trump's Agreement more favorable terms as to wages than are contained in any other Local 54 collective bargaining agreement in Trump's industry; (3) Trump alleges that in a subsequent arbitration presenting "identical" facts it was determined that the employer was not obligated to pay buffet servers as non-tipped food servers.[1]

Trump's complaint contains no allegations that the proceedings were tainted by fraud, collusion, unfairness, or serious procedural irregularities. Nor does Trump allege that the collective bargaining agreement was contrary to a well-defined public policy. *See generally Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

### II.

This court must determine whether the arbitrator's award should be enforced. Plaintiff's complaint and the attached exhibits demonstrate that Trump seeks to vacate the arbitrator's award in favor of Local 54 because Trump believes the arbitrator misconstrued the contract language.

■■■ Misconstruction of contract language is not a legitimate basis for judicial review of an arbitration award. *See Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969); *Super Tire Engineering v. Teamster's Local Union No. 676*, 546 F.Supp. 547, 550 (D.N.J.), *rev'd on other grounds*, 721 F.2d 121 (3d Cir.1983) *cert. denied*, 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984); *Newark Wire Cloth Co. v. United Steelworkers of America*, 339 F.Supp. 1207, 1210, 1211 (D.N.J.1972). Arbitration is the preferred method for resolving disputes between a union and an employer. *Butler Armco Independent Union v. Armco Inc.*, 701 F.2d 253, 255 (3d Cir.1983). Federal law accords arbitration and arbitrators' award favored status. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Retail Clerks v. Lion Dry Goods Inc.*, 341 U.S. 389, 86 S.Ct. 87, 15

---

**1.** *See Hotel and Restaurant Employees International Union Local 54 v. Golden Nugget Casino*     *Hotel,* May 16, 1986 (Howard, Arb.).

L.Ed.2d 81 (1965). It is important federal labor policy that parties to a collective-bargaining agreement must have reasonable assurance that their contract will be honored. *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 771, 103 S.Ct. 2177, 2186, 76 L.Ed.2d 298 (1983). If it were otherwise, one purpose for resort to arbitration —*i.e.,* avoidance of litigation—would be frustrated. *See Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805 (2d Cir.) *cert. denied* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); *cf. Perry v. Thomas,* — U.S. —, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (discussing arbitration in context of securities dispute).

In *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), the court observed,

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

The court went on to say,

> [P]lenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never by final.

> . . . . .

> It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Id.* at 599, 80 S.Ct. at 1362. The Supreme Court has established a narrow scope of review by the federal courts. An arbitrator's award must be enforced "so long as it draws its essence from the collective bargaining agreement." *Id.* at 597, 80 S.Ct. at 1361. Public policy encourages peaceful settlement of industrial disputes by means of binding arbitration. *See id.* at 596–99, 80 S.Ct. at 1360–62.

■ Under the rule of the Third Circuit, a court may set aside an arbitrator's award only when the interpretation is not rationally derived from the agreement.

> [A] labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only when there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Teamster Union Local 115 v. DeSoto, Inc.,* 725 F.2d 931, 934 (3d Cir.1984); *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d at 1128.

### III.

■ In reviewing the arbitrator's decision, this court finds that the award draws its essence from the words of the contract itself. The arbitrator's award is rationally derived from the agreement viewed in the light of its language, context, and indicia of the parties intentions. The award considers the words of the agreement closely, and the arbitrator adequately supports his conclusions by principles of contract construction.

When it signed the agreement, Trump was in a partnership with Harrah's which operated two casino hotels, Harrah's Trump Plaza and Harrah's Marina Hotel Casino ("Marina"). At the time the Union's Local President negotiated with the employer representatives, the record contains testimony that food servers at the Marina's buffet room were receiving a guaranteed gratuity for each customer, including those who were not covered by a package plan. As a result, the arbitrator noted, food servers were earning $30,000 to $35,000 a year, while managers were leaving their jobs to become buffet room food servicers; there was a morale problem. Arbitrator's opinion at 9.

The arbitrator's report reveals that the Marina representative raised the compensa-

tion problem and proposed the new classification of non-tipped food server as a solution. The arbitrator determined from the testimony of both sides that the purpose of this new classification was to pay the "non-tipped busperson" rate to people who did not like being called "non-tipped busperson." The arbitrator found that the testimony of Trump and Local 54 concerning the reason for the establishment of the non-tipped food server classification precludes Trump's construction of Article XIII as initiating no change in Trump's established manner of operation. He noted that at the time of his award five casino/hotels were already applying the non-tipped rate to their pay-as-you-enter buffet rooms. If Le Grand Buffet food servers were to receive a tipped food server rate, Trump would be "in the anomalous position of paying them a lower wage rate than the food servers at its Marina's buffet room." Arbitrator's opinion at 35. Moreover, there is no outlet other than pay-as-you-go buffet rooms to which the non-tipped food server rate applies. To allow Trump to compensate Le Grand Buffet workers as "tipped food servers" would render the "non-tipped" classification a nullity.

In his opinion, the arbitrator addresses both parties' understanding and interpretation of Article XIII. He found that the Union participants in the negotiations understood that under the option provided by Section (a) of Article XIII a casino/hotel employer was either to utilize the non-tipped food server classification or the non-tipped bus-person classification. Secondly, he found that the Union had understood that the contract had followed established industry practice whereby a food server is classified as "tipped" only if afforded the opportunity to present a check to the customer upon completion of the meal.

Trump maintained that there was no industry-wide practice of requiring an employer to pay the non-tipped rate to buffet food servers. The arbitrator interpreted other arbitrations as establishing that tip earnings should be taken into account in determination of compensation classifications. He noted that in 1980 another arbitrator in an arbitration involving Resorts International had ruled that when showroom captains lost tip earnings by management's change in the system of allocating tables to customers, the captain's rate of pay was open for review and adjustment. *See* Arbitrator's opinion at 17–18. Similarly, in a 1982 arbitration which arose when Resorts International changed a buffet room from a pay-as-you-go to a pay-as-you-enter system, a third arbitrator ruled that the rate of pay of food servers was open for review. *See id.* at 19.

The arbitrator in this case found that the interpretation of Article XIII advanced by Trump—that the contract allows Trump to use the tipped classification—has no basis at all in the language of the contract: "The Employer may use these new classifications at their option." Neither that sentence nor Article XIII's Section (a), which deals with the new classification of non-tipped food server refers to the tipped server classification. The arbitrator based his determination upon the wording of the contract:

> Section (a) does not even suggest, let alone state, that an employer had the option of using the tipped food server classification instead of the non-tipped food server classification.

Moreover, the arbitrator found that Trump's application of Article XIII would violate the bargain implicit in the classification concept incorporated in the Agreement's job classification schedule: that employees shall receive the rate of pay specified for the job they perform; that the rate of pay of a classification corresponds to the job content.

## IV. CONCLUSION

In arbitrating between Trump and Local 54, the arbitrator grounded his analysis upon (a) the industry context at the time of the negotiations; (b) examinations and cross-examinations of the parties concerning their respective understandings and intents in entering into the agreement; (c) prior decisions of other arbitrators in related matters; and (d) the language of the contract itself. Upon a consideration of the pleadings it is clear that the arbitra-

tor's award draws its essence from the collective bargaining agreement.

Because the grievance comes within the scope of the contract's broad arbitration clause, and because the arbitration is rationally related to the contract, this court will dismiss Trump's complaint for failure to state a claim upon which relief can be granted.