**GULF & WESTERN MANUFACTURING CO., Plaintiff,**

**v.**

**UNITED STEELWORKERS OF AMERICA, DISTRICT NO. 9, Defendant.**

**Civ. No. 86–4833 (JWB).**

United States District Court, D. New Jersey.

Feb. 9, 1988.

Marc M. Baldwin, Parker, McCay & Criscuolo, Marlton, N.J., and Roger D. Susanin, McAleese, McGoldrick & Susanin, King of Prussia, Pa., for plaintiff.

Sanford R. Oxfeld, Oxfeld, Cohen & Blunda, Newark, N.J., and Rudolph L. Milasich, Jr., Asst. Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., for defendant.

BISSELL, District Judge.

These cross-motions for summary judgment arise out of a complaint filed on December 1, 1986 by Gulf & Western Manufacturing Company ("Gulf & Western") against United Steelworkers of America, Districn No. 9 (the "Union"), requesting this Court to vacate and set aside the labor arbitration award issued September 12, 1986, pursuant to Section 301 of Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 185. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1337, and 29 U.S.C. Section 185.[1]

Plaintiff alleges in its complaint that the arbitration award must be vacated because the arbitrator exceeded the scope of his authority, the opinion and award do not draw their essence from the collective bargaining agreement between the parties and are otherwise contrary to the agreement and controlling law. In its counterclaim, the Union seeks to confirm and enforce the arbitration award and correspondingly order Gulf & Western to fulfill the terms of the arbitration award, including payment of interest on amounts due and owing, as well as costs and attorneys' fees.

1. In its counterclaim, defendant improperly asserts that the Court has jurisdiction over this action under Section 4 of the federal Arbitration Act, 9 U.S.C. Section 4. The Arbitration Act does not apply to "contracts of employment of ... workers engaged in foreign or interstate commerce," 9 U.S.C. Section 1, but "the federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that Section 301 of the Labor Management Relations Act of 1947 (28 U.S.C. Section 185) empowers the federal courts to fashion rules of common law to govern '(s)uits for violation of contracts between an employer and a labor organization' under the federal labor laws." *United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* — U.S. —, — n. 9, 108 S.Ct. 364, 372 n. 9, 98 L.Ed.2d 286, 300 n. 9 (1987) (quoting *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)).

*Factual Background*

In 1984, plaintiff's parent, Gulf & Western Industries, Inc., embarked on a divestiture program which included plaintiff's Taylor Forge Stainless Division, then consisting of a manufacturing plant in Somerville, New Jersey. The production and maintenance employees at plaintiff's Somerville facility were represented by the defendant Union. The Union negotiated a collective bargaining agreement on behalf of these employees effective April 1, 1981, with an expiration date of April 1, 1984. Rather than negotiate a new agreement in light of the company's decision to sell the Taylor Forge Stainless Division, the plaintiff and the Union agreed that the 1981 agreement would be extended on a month-to-month basis and would remain in effect for two weeks after the date of sale to allow the Union to negotiate with the new owners for a renewal of the agreement.

On October 26, 1984, the Somerville plant was sold to Michael Kearney, a former on-site manager of the facility. Defendant contends that two days before this sale Kearney held a meeting of all the bargaining unit employees at the plant and announced that he was taking over as the new owner on Friday. At that time there were 120 union employees on layoff and only 30 actively employed. Kearney stated at this meeting that it was his intention to cut the workforce even further and that employees on layoff status would never be called back.

The instant grievance, dated October 24, 1984, was allegedly filed with Gulf & Western's Taylor Forge plant manager, Thomas Murphy, the next day. The company, however, contends that it did not receive the grievance until it was forwarded to it by the new owner, who was given a copy during negotiations with the Union on November 5, 1984. The Union characterized its grievance as a request for severance pay and sought the following relief:

"Local 5846 demands that all our member (sic) who are entitled under Article XXI (Severance) be paid in full if they meet the eligibility requirement. Mr. Keaney (sic) on Wed., 10/24/84 told the employees that the laid off people would never come back."

Plaintiff's App., J–3 at 436. The issue of whether the company's employees were entitled to pension benefits due to the shutdown of the plant was subsequently raised by the Union in an exchange of letters between the parties addressing the Union's grievance in December 1984 and January 1985, without any objection from the company at that time.

Gulf and Western's active employees continued to work for the new company for two weeks after the sale. Negotiations with Kearney during this time period resulted in an agreement in which the Union relinquished its right to represent any employee of Taylor Forge Stainless, Inc., the new owner, and the employees agreed to take voluntary layoffs.

The issues before the arbitrator included the threshold questions of timeliness of the Union's grievance and the "substantive" arbitrability of the claim for pension benefits, as well as the claim that the company violated the collective bargaining agreement by not giving severance and pension benefits to all eligible affected employees. After presentation of argument, testimony, proofs and briefs, arbitrator Pearce Issued his opinion and award on September 23, 1986. The arbitrator found that the grievance was timely filed within five-working-days as required in the agreement between the parties. Moreover, he held that the Union's right to pension benefits was arbitrable because "(i)t is the matter of being 'vested' and 70/80 Pensions under Article VIII of the Labor Agreement that concerns us here—that goes to the provisions of the labor agreement" and therefore is arbitrable.[2] Pl.App., Part I, J–1 at 11. As to the

---

2. The arbitrator's decision on the issues of timeliness of the Union's grievance and the timeliness of the Union's claim for pension benefits, which was raised after the initial grievance was filed, have not been opposed by Gulf & Western in its motion and accordingly will stand. Moreover, during the arbitration, the company argued that the pension issue was not arbitrable under the collective bargaining agreement: thus, the Union's contention that Gulf & West-

merits of the substantive issues raised, the arbitrator concluded that the grievants were entitled to both a severance allowance under Article XXI of the collective bargaining agreement and to pension benefits earned pursuant to Articles V and VI of the pension plan, referred to in Article VIII of the agreement. *Id.* at 22–23.

*Discussion*

### A. Severance Pay Issue

▮ Entitlement to severance allowances is addressed in Article XXI of the collective bargaining agreement which limits the "Conditions of Allowance" to:

"When, in the sole judgment of the Company, it decides to relocate or *close the plant permanently, or a substantial portion thereof, and terminate the employment of individuals,* an employee whose employment is terminated shall be entitled to a severance allowance in accordance with and subject to the following provisions (of eligibility addressing years of service, etc.)."

Plaintiff's App., Part III at 382, Section 144 (emphasis added). The gravamen of the dispute between the parties is whether the arbitrator was correct in finding that Gulf & Western's sale of its Taylor Forge Stainless Division was a closing of the plant or a substantial portion thereof leading to a termination of the employment of the employees represented by the Union who were actively employed or in layoff status at the time of the sale.

Gulf & Western argues that the arbitrator exceeded his authority when he found that the sale of its Somerville plant as an ongoing business was a closing of the plant permanently or a substantial portion thereof, thereby entitling the employees to severance pay. This interpretation of the agreement, contends the company, manifestly disregards the clear and unambiguous language of the collective bargaining agreement and must be vacated because the record reveals that its stainless division never closed and its employees were not terminated from employment.

The Supreme Court has enunciated a strong federal policy in favor of settling labor disputes by arbitration, which limits the role to be played by district courts in reviewing the validity of a labor arbitration award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *see also United Paperworkers,* ―― U.S. at ――, 108 S.Ct. at 370–71, 98 L.Ed.2d at 298–99. Under well-established standards of review, a federal court must refrain from reviewing the merits of an arbitration award. *Enterprise Wheel & Car Corp.,* 363 U.S. at 596, 80 S.Ct. at 1360. District courts are not to review awards for legal errors, nor may they overrule an arbitrator's decision simply because they believe their own interpretation of the contract would be a better one. *Id.* Rather, district courts are limited to determining whether an award "draws its essence from the collective bargaining agreement." *See W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (quoting *Enterprise Wheel & Car Corp.,* 363 U.S. at 596, 80 S.Ct. at 1360); *see also Super Tire Engineering Co. v. Teamsters Local Union No. 676,* 721 F.2d 121, 123–24 (3d Cir. 1983), *cert. denied,* 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984).

An arbitration award interpreting a collective bargaining agreement draws its essence from the agreement and must be upheld:

"If the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969). Thus, in order to disturb an arbitrator's award a court must overcome a strong presumption in favor of

ern waived its argument as to arbitrability is unfounded.

the award. This strict standard means that "a reviewing court will decline to sustain an award 'only in the rarest case.' " *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir.1986) (quoting R. Gorman, *Labor Law* 586 (1976)). Deference to the arbitrator's decision advances the congressional intent of peaceful resolution of labor disputes through binding arbitration, by investing the decision with finality. *See Enterprise Wheel*, 363 U.S. at 596–99, 80 S.Ct. at 1360–62. It is the arbitrator's construction which was bargained for; therefore, except in the rare case of manifest disregard of the collective bargaining agreement, the arbitrator's award stands.

Accordingly, in reviewing the arbitrator's decision, this Court must keep in mind that it may not freely vacate an arbitration award because it might have interpreted the labor agreement differently. *See United Steelworkers of America v. American Smelting and Refining Co.*, 648 F.2d 863, 867 (3d Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Rather, the arbitration award may be vacated only if Gulf & Western demonstrates that the award is not in any rational way derived from the collective bargaining agreement. *Id.*

In awarding severance pay, the arbitrator reasoned:

"The grievants are entitled to severance allowance from G & WMC under Article XXI of the Agreement in evidence as Exhibit J–1. The 'Conditions of Allowance,' *supra*, in part are conditioned upon the decision to '... close the plant permanently, or a substantial portion thereof, and terminate the employment of individuals ...'. For all intents and purposes when G & WMC decided to rid itself of the Somerville plant it decided to permanently cease operating the facility and to permanently terminate any employment relationship it had with the 120 employees already on layoff and the 30 or so employees at work in October, 1984. Thus, as far as the employees were concerned they had no employment relationship with G & WMC— their employment relationship was termi-

nated and the provisions of the severance allowance were triggered. Article XXI clearly states, in pertinent part, *supra*, '... an employee whose employment is. terminated <u>shall be entitled to severance allowance</u> ...' ". (Underlining added)

Plaintiff's App., Part I at 22.

The Court does not believe that this reasoning exhibits a manifest disregard for the collective bargaining agreement. To the contrary, it appears that the arbitrator properly considered the plain meaning of the contract language and the obvious effect the company's action in selling the plant had on its employees. It was rational to conclude that the parties intended that "close the plant permanently ... and terminate the employment of individuals" would encompass a sale of the business, even as a going concern, where the company would permanently cease operating the facility and permanently terminate any employment relationship it had with its employees. Thus, the arbitrator's finding that severance pay should be provided in that situation draws its essence from the collective bargaining agreement.

### B. Pension Benefits Claim

■ Plaintiff seeks to have the arbitrator's finding that defendant's pension grievance is arbitrable and his award of pension benefits earned under Gulf & Western's pension plan with Local 5846 vacated. As a threshold question, the Court must decide the arbitrability issue. The company argues that in contrast to the severance entitlement which was to be judged by whether the award draws its essence from the collective bargaining agreement, "the question of arbitrability of the 70/80 pension claim involves a *de novo* review of the arbitrator's jurisdiction under the collective bargaining agreement and whether the 70/80 pension claim falls within it." Pl.Br. in Support of Cross–Motion at 30. Since it is the Court's province to determine the question of arbitrability, the arbitrator's conclusion of arbitrability should be given no deference by this Court. Accordingly, the company urges the Court to find that this issue was not arbitrable

under the collective bargaining agreement's grievance procedure but that the parties' proper recourse was to file a claim against the pension plan pursuant to the claims procedure therein.

■ At the time of the instant grievance, Gulf & Western and Local 5846 were parties to a collective bargaining agreement dated April 1, 1981, and a bargained-for Pension Agreement dated April 1, 1981.[3] The collective bargaining agreement expressly provides for the arbitration of a grievance, which is defined as "a difference of opinion between the Company and the Union, or between the Company and an employee covered by this Agreement, with repsect to the meaning and application of the terms of this Agreement." Plaintiff's App., J–1, Section 49 at 367. The Pension Agreement does provide for an appeal process to be followed in the case of a denial of benefits, which includes a re-examination of the claim by the Board of Administration of the plan and a subsequent appeal to an impartial umpire. The duties of the Board of Administration, as specified in the plan, include:

"To determine all benefits and resolution of all questions arising from the administration, interpretation and application of Plan provision, either by general rules or by particular decisions so as not to discriminate in favor of or against any person and so as to treat all persons in similar circumstances in a uniform manner."

Pl.App., J–2, Paragraph 93 at 424.[4]

The collective bargaining agreement in existence between the parties herein at the time the Union filed the instant grievance expressly addressed the issue of employee pension benefits:

**3.** The Court is assuming and the record seems to confirm that the pension benefits set forth in this agreement were bargained-for benefits negotiated at or about the same time as the collective bargaining agreement.

**4.** Contrary to the assertion made by Gulf & Western that "the Pension Agreement vests with the Board the sole and exclusive responsibility to perform this function" (Pl.Br. in Support of Cross–Motion at 31), the language of the Pension Agreement is not so exclusive but states

ARTICLE VII

SOCIAL INSURANCE & PENSION

\* \* \* \* \* \*

"The Pension Agreement and pension benefits as contained in the pension agreement dated *April 1, 1981*, shall remain in effect. The following additional changes were agreed upon: (a) Effective *April 1, 1981* the amount of a regular pension for employees retiring after that date shall be *$15.50* per month per year of service. (b) Eliminate 35 year maximum for unit benefit credit. (c) Change definition of Permanent and Total Disability to read: 'If the employee has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any employment of the type covered by the Basic Agreement and ...'. (d) Eliminate ineligibility for a disability pension resulting from 'habitual drunkenness or addiction to narcotics' to eligible for a disability pension. (e) Eliminate severance deductions from any deferred vested pensions. (f) *Change 75/80 retirement to 70/80.* (g) Eliminate 1% alternative method benefit calculation."

Pl.App., J–1, Paragraph 48 at 366–67. In addition, Appendix "E" to the agreement discusses in more detail these and other pension improvements agreed to by the parties at the time the collective bargaining agreement was negotiated. These changes and/or improvements, such as the change from 75/80 retirement to 70/80, are then discussed more fully in the pension agreement between the company and the Union which was effective March 31, 1981, a day before the effective date of the collective bargaining agreement.

■ In the *Steelworkers* trilogy[5] the Supreme Court found that courts have a limit-

that the Board shall have full authority and responsibility for administering the plan in accordance with its provisions, and its duties and responsibilities include, but are not limited to, those listed therein.

**5.** *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car*

ed function in Section 301 suits for determining the parties' rights and obligations to arbitrate grievances under a collective bargaining agreement which "is confined to ascertaining whether the party seeking arbitration is making a claim which on its fact is governed by the contract." *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Arbitration of grievances should be compelled unless it can be said with positive assurance that the arbitration clause in the agreement is not susceptible to an interpretation that covers the asserted dispute. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Moreover, all doubts on the question of arbitrability are to be resolved in favor of coverage. *Id.*

■ Although the federal courts have adopted this strong policy in favor of arbitration, they have not lost sight of the fact that " '(a)rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *Warrior & Gulf Navigation Co.*, 363 U.S. at 582, 80 S.Ct. at 1353). Thus, absent the parties' clear expression to the contrary, *i.e.*, a willingness to voluntarily submit the question of arbitrability to an arbitrator, *Johnson v. United Food & Commercial Workers, Int. Union Local No. 23*, 828 F.2d 961, 964 (3d Cir.1987), the threshold question of whether a dispute is arbitrable is to be decided by the court. *AT & T Technologies*, 475 U.S. at 648–50, 106 S.Ct. at 1418–19. In making this judicial determination, even where the arbitrator has addressed and decided the issue of arbitrability, the arbitrator's decision need not be given any deference.

In support of its argument that the arbitrator wrongly found the pension benefit claim arbitrable under the grievance procedure of the collective bargaining agreement, Gulf & Western relies on the Seventh Circuit's decision in *Printing Special-*

*Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d

*ties & Paper Products Union Local 680, Graphic Communications Int'l Union, AFL–CIO v. Nabisco Brands Inc.*, 833 F.2d 102 (7th Cir.1987). In that case, the collective bargaining agreement between the parties contained a broad arbitration clause requiring arbitration of "any grievance or misunderstanding involving wages, hours or working conditions...." The agreement also included one reference to Nabisco's pension plan which covered all union and non-union employees at its nationwide facilities which notes: "The company agrees to continue its present Pension Plan in full force and effect for the term of the agreement." At the time Nabisco sold one of its plants to Federal Paper Board Company, several employees claimed the sale was a job termination which entitled them to elect special early retirement benefits, rather than accept employment with the new company. After their request for pension benefits was denied and affirmed on review by the Employee Benefits Committee, the union filed a grievance under the collective bargaining agreement.

In affirming the district court's finding that this dispute was not arbitrable under the collective bargaining agreement, the Seventh Circuit concluded:

"We are convinced that the passing reference to the Pension Plan in the collective bargaining agreement does not bring specific pension disputes, such as the ones involved here, under the umbrella of the arbitration clause of the agreement. The collective bargaining agreement did not incorporate the provisions of the Pension Plan, but merely stated that Nabisco would keep the Pension Plan in full force and effect. We agree with the Third Circuit's statement in *RCA Corp. v. Local 241, International Federation of Professional & Technical Engineers*, 700 F.2d 921, 927 (3d Cir.1983), that the 'mere mentioning of the Retirement Plan in the General (collective bargaining) Agreement is insufficient reason to construe the Retirement Plan as part and parcel of the General Agreement.' "

1424 (1960).

*Id.* at 105. The court based its decision on the lack of any clear relationship between the pension plan and the labor agreement, the strong evidence of the pension plan's independence from the agreement, and the lack of pension plan terms in the collective bargaining agreement. In addition, the court looked to the bargaining history of the parties, which showed that proposed changes to the pension plan submitted by the union during negotiations have been rejected by Nabisco, further establishing that pension plan terms were not included and not intended to be included in the collective bargaining agreement.[6]

■ The present matter is clearly distinguishable from the *Nabisco Brands* case and the Third Circuit's decision in *RCA Corp.*, relied on by the court in *Nabisco Brands*. The collective bargaining agreement between the parties herein does more than merely mention the retirement plan. It specifically lists changes to the pension plan negotiated by the Union during collective bargaining which amend in specific detail the pension agreement. The fact that pension benefits were bargained for and that these issues were raised simultaneously with the other matters included in the collective bargaining agreement means (at the very least) that the changes agreed to and listed in the labor agreement are part and parcel of the collective bargaining agreement.[7] In light of the number and scope of these amendments, the Court determines that the entire retirement plan is also incorporated in the collective bargaining agreement. *See United Steelworkers of America v. Fort Pitt Steel Casting*, 635 F.2d 1071, 1080 (3d Cir.1980) ("the pension and insurance benefits are alluded to in the 1975 Agreement, and thus arguably are incorporated by reference").

■ Furthermore, the pension plan's so-called grievance mechanism, *i.e.*, an appeal to the plan's Board of Administration, appears to address itself to disputes over an individual's benefits under the plan. This is clear from Paragraph 9.3(b)'s discussion of the Board's resolution of questions "so as not to discriminate in favor of or against any person and so as to treat all persons in similar circumstances in a uniform manner." This provision of the pension plan clearly does not address itself to the situation when an entire group of employees seeks resolution of a question of general entitlement to pension benefits. Although not raised by the parties herein, this may be a case where there is co-extensive jurisdiction under both of these agreements over this dispute, neither one being mutually exclusive of the other. In that situation, the Union could have chosen to raise its claim in either forum and properly decided to bring it to the arbitrator pursuant to the collective bargaining agreement. If co-extensive jurisdiction exists, then arbitration under the collective bargaining agreement is proper because arbitration should be compelled unless it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. *Warrior & Gulf Navigation Co.*, 363 U.S. at 583, 80 S.Ct. at 1353.

There is no doubt that the arbitration clause in the collective bargaining agreement is susceptible to an interpretation that it covers the pension benefits dispute, an interpretation which this Court adopts. Accordingly, for the reasons stated above, this Court finds that the Union's grievance over employees' entitlement to pension benefits is arbitrable under the broad arbitration clause in the collective bargaining agreement between the Union and Gulf & Western.

■ Having found plaintiff's claim for pension benefits arbitrable, the Court will now proceed to review the arbitrator's finding that the employees are entitled to pen-

---

6. However, at the end of its opinion, the court *in dicta* noted that the result reached may have been different "if Nabisco and the union had explicitly bargained over the terms of the pension plan and made their agreement a part of the collective bargaining agreement." *Id.*

7. Moreover, a review of the pension plan shows that some terms, such as when service is broken, are defined with reference to the collective bargaining agreement. *See* Pl.App., J–2, Section 1.15(d) at 399.

sion benefits earned prior to the sale of the plant. Under the plan, an employee qualifies for deferred vesting of rights when employment is terminated and he qualifies for 70/80 benefits [8] when employment is broken by reason of a permanent shutdown of a plant or by reason of a layoff. In ruling that Gulf & Western violated the collective bargaining agreement in refusing pension benefits, the arbitrator found:

"As to Pension, Articles V (Retirement Benefits) and VI (Deferred Vested Benefits) of the Pension Agreement, referred to in Article VIII of the basic labor agreement, set forth the benefits to which the affected employees are entitled for their years of service with G & WMC. These benefits are controlled by the specific provisions as they apply to the employees of G & WMC up to and including the date of Sale and termination of their employment with G & WMC. These benefits relate both to 70/80 pension and vesting rights. Those rights did not disappear when the employment relationship of the affected employees ended as a result of 'sale' of the Somerville facility to TFS. Thus, the affected employees are entitled to whatever pension benefits they may have 'earned' under the Plan prior to October 26, 1984."

This Court finds that the arbitrator's decision as to entitlement to pension benefits is rationally derived from the plain language of the agreement between the parties. The sale of the Taylor Forge plant terminated these employees' employment relationship with Gulf & Western, but did not divest them of their rights to pension benefits, thereby making some of them eligible for vested deferred benefits and 70/80 benefits. In making this finding, the Court holds there is no question that the arbitrator was "arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers,* —— U.S. at ——, 108 S.Ct. at 371, 98 L.Ed.2d at 299. Therefore, this Court concludes that the arbitrator's award of pension benefits draws its essence from the

collective bargaining agreement and must be affirmed.

*C. Request for Interest, Costs, and Attorney's Fees*

█ Finally, the Court will consider the Union's request for interest on the arbitration award, costs and attorney's fees. As to interest on the arbitrator's award, the Union's request is granted. *See Trump Plaza Associates v. Hotel & Restaurant Employees Int'l Union, Local Union No. 54, AFL–CIO,* 684 F.Supp. 104 (D.N.J. 1987); *Stroh Die Casting Co. v. Int'l Association of Machinists & Aerospace Workers, AFL–CIO, Lodge No. 10,* 553 F.Supp. 68, 70 (E.D.Wisc.1982). *Cf. Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 63 (3d Cir.1986) (confirmed arbitration award under federal Arbitration Act bears interest from date of arbitrator's judgment). The award of pre-judgment interest in a Section 301 action is within the discretion of the court. *Int'l Association of Bridge, Structural & Ornamental Ironworkers, Local Union No. 103, AFL–CIO v. Higdon Construction Co.,* 739 F.2d 280, 283 (7th Cir.1984); *Oil, Chemical & Atomic Workers Int'l Union v. American Cyanamid Co.,* 546 F.2d 1144 (5th Cir.1977). This Court determines in the exercise of its discretion that the Union's request for interest is proper and, therefore, interest is awarded on the arbitration award from the date of the arbitrator's decision.

█ The Union's request for attorney's fees, however, is denied. Attorney's fees are recoverable in an action to enforce an arbitration award if the non-complying party acts without justification or did not have a reasonable chance of prevailing. *Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Brothers Co.,* 625 F.2d 1092, 1094 (3d Cir.1980). Many courts have characterized the circumstances under which an award of attorney's fees will be made, in an action to enforce an arbitration award, as bad faith. *See, e.g., Int'l Union*

---

**8.** A "70/80 pension" refers to an early retirement plan for employees who, having completed 15 years of service with the company, either have otbained the age of 55 and have a combined age and years of service equal to 70 or more; or have a combined age and years of service equal to 80 or more. *See* Pl.App., Part III, J–2, Paragraph 4.6 at 406.

of Petroleum & Industrial Workers v. Western Industrial Maintenance, Inc., 707 F.2d 425, 428 (9th Cir.1983); Int'l Brotherhood of Electrical Workers, Local No. 265 v. O.K. Electric Co., 793 F.2d 214, 216 (8th Cir.1986). In the instant case, Gulf & Western's refusal to abide by the arbitrator's decision was reasonable, for there was legal precedent favoring its position, and the question of arbitrability of the pension claim raised below was one for the Court to resolve. Therefore, the Union's request for attorney's fees is denied.

Taxable costs are awarded to the defendant Union, the prevailing party in this litigation. An Order reflecting this decision has been filed and transmitted to counsel under separate cover.

## ORDER

This matter having been opened to the Court on the cross-motions for summary judgment; and the Court having read and cosidered the papers submitted in support of and in opposition to said motions; and the Court having heard and considered the arguments of counsel; and good cause having been shown for the entry of this Order,

It is on this 10th day of February, 1988,

ORDERED that the arbitrator's award of pension benefits is hereby affirmed; and it is further

ORDERED that interest is hereby awarded, from the date of the arbitrator's decision, on the arbitration award; and it is further

ORDERED that defendant's request for attorney's fees is hereby denied; and it is further

ORDERED that taxable costs are hereby awarded to defendant Union.